**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00293-CV**

_____

**SCOTT MITCHELL OBEGINSKI, Appellant**

**V.**

**JAUL RAY ELIZONDO, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-08-12296-CV**

**MEMORANDUM OPINION**

After his home was sold at a non-judicial foreclosure sale, Scott Mitchell Obeginski acting pro se sued Jaul Ray Elizondo for what he characterizes as a "trespass to rights case." In ten issues, Obeginski challenges the trial court's judgment in favor of Elizondo and various pre-trial rulings, along with complaining that the trial court did not properly notify him of the trial setting. Obeginski filed two notices of appeal. He filed the first notice of appeal at 7:27 a.m. on August 26, 2024, the day trial was scheduled to begin. In the first Notice of Appeal, he expressed

1

his desire to appeal certain rulings in the trial court's Order signed August 25, 2024, which denied Obeginski's: Motion to Dismiss for Want of Prosecution; Motion to Show Authority; Motion to Reconsider Objection to Evidence; and Motion to Dismiss for Lack of Standing. Those motions were heard on August 23, 2024. In his second Notice of Appeal filed on August 27, 2024, the day after trial, Obeginski complained of the trial court's Final Judgment. He contended that the trial proceeded without proper notice after being reset in violation of Texas Rule of Civil Procedure 245. As discussed below, we affirm the trial court's judgment.

## BACKGROUND

This case involves disputed title to real property that Elizondo purchased at a non-judicial foreclosure sale, which Obeginski and his wife previously owned. Elizondo paid for the property with three cashier's checks and received a deed from the substitute trustee recorded in the Montgomery County records as document number 2023065947 ("Foreclosure Deed"). Unfortunately, the substitute trustee's deed incorrectly spelled Elizondo's name as "Elizando." Although the substitute trustee later attempted to fix this mistake by issuing a corrected deed, the damage was done, as Obeginski seized on the error. Obeginski created various corporate entities and trusts, and using an assumed name that matched the misspelling in the substitute trustee's deed, he began trying to transfer title to himself and prevent

2

Elizondo from possessing the property. Obeginski refused to vacate the property and filed this lawsuit against Elizondo.

**Relevant Procedural History**

Obeginski initially sued Elizondo in August 2023 in a one-sentence petition that alleged, "I claim harm by way of trespass[,]" but as the proceedings unfolded, he clarified that by "trespass" he meant that Elizondo allegedly harassed him. Elizondo answered, then asserted counterclaims against Obeginski.[1] In Elizondo's statement of jurisdiction, he noted that the lawsuit involves title or interest in real property located in Montgomery County, Texas, and the parties involved are in Texas. Elizondo also claimed he is the record title holder of the property at issue, which is located at 7086 Kingston Cove Lane in Willis, Texas. Elizondo also alleged he purchased the property at a lawfully conducted foreclosure sale on July 5, 2023, and received a Substitute Trustee's Deed "recorded at Instrument No. 2023065947." Elizondo alleged that Obeginski and his wife owned the property until the foreclosure sale occurred. Elizondo also claimed that Obeginski continued to reside on the property, although Elizondo tried to unsuccessfully evict him.

In his Original and Amended Answer, Counterclaims, and Third-Party Claims, Elizondo described the circumstances surrounding the foreclosure sale. Specifically,

---

[1]Elizondo also asserted third-party claims against Obeginski's wife, who was never served.

3

Elizondo explained that the Substitute Trustee's Deed misspelled his name as "Elizando." According to Elizondo, Obeginski used this misspelling to his advantage and on August 1, 2023, Obeginski formed a Texas limited liability company, "primary equity real estate, LLC." Elizondo alleged that the same day, using the name "JAUL ELIZANDO, Scott Obeginski, Manager," Obeginski executed and recorded a Quitclaim Deed for the subject property placing it in the name of "Sclana Properties, LLC, Scott Obeginski, Manager." Obeginski recorded it "at Instrument No. 2023071938 of the Official Public Records of Montgomery County, Texas." According to Elizondo, nine days later, on August 10, 2023, the substitute trustee executed a corrected deed properly spelling "JAUL ELIZONDO" that was recorded as Instrument No. 2023075276 ("Corrected Deed"). Elizondo pleaded that on August 11, 2023, Obeginski registered an assumed name certificate with the Texas Secretary of State in the name of "primary equity real estate, LLC" stating that the company was doing business as "JAUL ELIZANDO."

Elizondo asserted that Obeginski's filings were part of a "plan, scheme or design to cloud title to the Property and avoid eviction." Elizondo also alleged that Obeginski is the one committing trespass. Elizondo asserted causes of action for: (1) trespass to try title; (2) quiet title/remove cloud from title; (3) trespass to real property; (4) claim for relief for permanent injunction and writ of possession; (5) declaratory judgment that Elizondo is the rightful owner of the property and entitled

4

to immediate possession; and (6) since Obeginski's conduct is intentional, Elizondo sought exemplary damages. He also sought attorney's fees. Elizondo included copies of the deeds as exhibits to his Original Answer, Counterclaims, and Third-Party Claims.

In November 2023, Elizondo filed his First Amended Original Answer, Counterclaims, and Third-Party Claims, which asserted the same causes of action but included more detailed information about Obeginski's corporate entities and where they were located. He again attached the deeds as exhibits.

On November 27, 2023, Obeginski filed a Motion to Strike (1) Original Answer, Counterclaims, and Third-Party Claims, and (2) First Amended Original Answer, Counterclaims, and Third-Party Claims. Obeginski argued that the pleadings violated an order signed by the 457th District Court on October 6, 2023, which stated that Elizondo's liens were fraudulent, expunged the Corrected Deed from the Montgomery County Clerk records, along with another unrelated to the claims asserted in this litigation, and barred Elizondo and the substitute trustee from filing any future documents against the property. Obeginski attached a copy of the order to his Motion to Strike. The trial court denied Obeginski's Motion to Strike.

In December 2023 and January 2024, Obeginski filed amended answers to Elizondo's counterclaims. In his amended answers, among other things, Obeginski pleaded that Elizondo's counterclaims violated a previous order from the 457th

District Court that "barred [Elizondo] from filing any future documents or causes against the property[,]" and again asked the trial court to strike the counterclaims.

On April 24, 2024, Obeginski filed a Motion to Show Authority claiming that Elizondo's attorney lacked authority to represent him in violation of Texas Rule of Civil Procedure 12. In the motion, Obeginski questioned opposing counsel's licensure status and accused him of barratry. Obeginski then set the motion to be considered via submission on May 10, 2024, at 9:00 a.m. On April 30, 2024, Elizondo filed his Response on Motion to Show Authority, which he supported with exhibits. Those exhibits included a printout of opposing counsel's active licensure status, counsel's declaration describing the circumstances of his retention, and a retainer contract executed by Elizondo and the attorney. The trial court denied Obeginski's Motion to Show Authority, finding that the evidence submitted established counsel was a licensed attorney eligible to practice in Texas at all relevant times and properly retained by Elizondo. The record shows that Elizondo's attorney submitted a proposed order denying these motions which was filed on April 30, 2024. Thereafter, on May 10, 2024, the trial court signed and dated the order. The signature contains a date and time stamp. Seemingly not understanding the distinction between the date the proposed unsigned order was filed (April 30, 2024) and the date the trial court later signed it (May 10, 2024), Obeginski accused the trial court of committing fraud by signing the order ten days before the hearing.

6

On May 28, 2024, Obeginski filed a Motion to Reconsider the denial of his Motion to Show Authority, which was set for hearing on May 31, 2024, to be considered with other pending motions before the trial court. He then filed a Supplement to Motion to Reconsider Motion to Show Authority the day before the hearing again questioning opposing counsel's licensure status and accusing him of barratry. On June 6, 2024, the trial court denied the Motion to Reconsider Motion to Show Authority.

Obeginski filed yet another Motion to Show Authority on August 13, 2024, followed by an Amended Motion to Show Authority on August 19, 2024, after Elizondo's attorney moved to quash multiple subpoenas duces tecum issued by Obeginski to relatives and entities related to Elizondo. The clerk's record reflects that these motions, along with Elizondo's Motions to Quash, were heard on August 23, 2024. After the hearing, on August 25, 2024, the trial court denied Elizondo's Motions to Show Authority. In the same Order, the trial court also denied Obeginski's Motion to Dismiss for Want of Prosecution, Motion to Reconsider Objection to Evidence, and Motion to Dismiss as to Jurisdiction.

Obeginski also complains about the trial judge's conduct in various hearings addressing his motions. That said, Obeginski failed to request or designate and have

7

the court reporter file a reporter's record on appeal, despite having an opportunity to do so.[2]

**Trial, Judgment, and Findings of Fact and Conclusions of Law**

Per the trial court's Docket Control Order entered on October 9, 2023, trial was originally scheduled for June 17, 2024. On May 17, 2024, when the trial court granted Obeginski's Motion for Continuance, the matter was reset for trial on the two-week rolling docket beginning August 19, 2024. The trial court notified the parties of the reset in the Order granting the Motion for Continuance and in the trial court's Notice of Reset, both signed on May 17, 2024. On August 8, 2024, the trial court filed a Trial Notification and emailed the parties that the matter was scheduled for a bench trial on August 26, 2024, at 1:00 p.m.

---

[2]Obeginski's Docketing Statement shows that he did not request a reporter's record or pay for its preparation. After Appellee complained in his brief that Obeginski failed to include record cites or file a reporter's record, Obeginski asked for leave to re-file his brief to add record cites, which we (this Court) denied. He also asked to file a reporter's record, which we did not deny; the clerk of this Court advised that we would not refuse to file a reporter's record because of a failure to timely request it, although we would not delay issuing an opinion. *See* Tex. R. App. P. 34.6(b)(3), 35.3(c). Obeginski never requested or had the court reporter file the record. Instead, he tried to file a Reply Brief in which he attached a partial reporter's record from a hearing that occurred on May 31, 2024. Yet the clerk informed him that the Reply Brief was marked "received" and not filed because, among other things, Obeginski improperly attached a hearing transcript as an exhibit. We advised that for the Court to consider the reporter's record, Obeginski needed to have the court reporter submit it. *See id.* 34.6. We also instructed him that he would need to correct it and file a compliant Reply Brief by June 9, 2025. Despite admonishing Obeginski of this and allowing him to have the record filed late, he did not file a compliant Reply Brief, nor have the reporter file any portion of the record.

8

At 7:27 a.m. on the morning of trial, Obeginski filed a Notice of Appeal stating he wished to appeal the trial court's August 25, 2024, Order denying his various motions on an interlocutory basis. About thirty minutes later, at 8 a.m., Obeginski filed his second Motion to Recuse/Disqualify Judge for Bias. Before 8:30 a.m. the same day, the trial court denied the Motion to Recuse and signed an Order referring the Motion to the Presiding Judge of the Second Judicial Region. The regional Presiding Judge signed an Order Denying Second Motion to Recuse, which was filed by 11:25 a.m. on August 26, 2024. The clerk's record shows that at 11:39 a.m. the trial court's administrator emailed the parties, including two email addresses for Obeginski, attached the signed Order Denying Second Motion to Recuse, and advised the trial would proceed as scheduled at 1:00 p.m. A copy of the administrator's email was also filed in the clerk's record at 1:14 p.m. Later, at 1:19 p.m. and 1:32 p.m., Obeginski e-filed two documents requesting notice of a trial resetting.

The trial proceeded as scheduled at 1:00 p.m., Elizondo personally appeared with counsel, and Obeginski failed to appear. The trial court signed a Final Judgment that Obeginski take nothing by his claims and among other things, that it is "ORDERED, ADJUDGED, DECREED, and DECLARED that Jaul Elizondo is the true and lawful owner of the Property – namely, 7086 Kingston Cove Lane, Willis, Montgomery County, Texas 77318[.]" It also awarded Elizondo title and possession

of the property, a writ of possession to the property, and stated that he was entitled to immediate possession of the property. The Final Judgment also "judicially corrected" the Foreclosure Deed document number 2023065947 to reflect "the Grantee is Jaul Elizondo." The Judgment further:

> ORDERED, ADJUDGED, DECREED, and DECLARED that the Quitclaim Deed executed in the name of "JAUL ELIZANDO, Scott Obeginski, Manager" as Grantor and "Sclana Properties, LLC, Scott Obeginski, Manager" as Grantee, dated August 1, 2023, recorded on August 1, 2023, signed by Scott Obeginski, Document #2023071938 (the "Quitclaim Deed") is a cloud on Jaul Elizondo's title to the Property, the Quitclaim Deed conveyed no title to or interest in the Property, and the Quitclaim Deed is nullified by this Judgment, having no legal or equitable effect whatsoever.
>
> It is further ORDERED, ADJUDGED, DECREED, and DECLARED that the Warranty Deed executed in the name of "Sclana Properties, LLC, Scott Obeginski, Manager" as Grantor and "Giza Trust, Scott Obeginski, Trustee" as Grantee, dated August 23, 2023, recorded on November 3, 2023, signed by Scott Obeginski, Document #2023071938 (the "Warranty Deed") is a cloud on Jaul Elizondo's title to the Property, the Warranty Deed conveyed no title to or interest in the Property, and the Warranty Deed is nullified by this Judgment, having no legal or equitable effect whatsoever.
>
> It is further ORDERED, ADJUDGED, DECREED, and DECLARED that the *Lis Pendens* and its attachments executed by "Scott Obeginski, a living sentient being" on pages 1 and 3, by "Scott M. Obeginski": with a thumbprint on page 5, and Scott Obeginski as "beneficiary and sole heir of the SCOTT MITCHELL OBEGINSKI OR ANY DERIVATIVE thereof trust" on page 11, dated April 23, 2024, recorded on April 23, 2024, signed throughout by Scott Obeginski, Document #2024039377 (the "*Lis Pendens*") is a cloud on Jaul Elizondo's title to the Property, the *Lis Pendens* conveyed no title to or interest in the Property, and the *Lis Pendens* is nullified by this Judgment, having no legal or equitable effect whatsoever. It is further ORDERED, ADJUDGED, DECREED, and DECLARED that the lien claimed within the *Lis Pendens* is itself a cloud on Jaul Elizondo's title to the Property, is invalid, and is hereby RELEASED.

10

The trial court awarded Elizondo attorney's fees through trial and contingent attorney's fees in the event of an appeal, post-judgment interest, and required Obeginski to post a supersedeas bond of $297,000.00 if he desired to stay execution of the judgment.

The trial court issued detailed Findings of Fact and Conclusions of Law. Relevant to Obeginski's complaint on appeal that he did not receive proper notice of the trial being reset, the Findings of Fact included the following:

> 22. The Court finds that on August 26, 2024 at 8:00 a.m. - that being the day set for trial and a mere 5 hours before the trial was scheduled to begin - Obeginski filed (1) his second Motion to Recuse and (2) an Interlocutory Appeal of certain Orders on motions heard on August 23, 2024, the Friday before trial.
>> a. The Court finds this was an effort by Obeginski to delay the trial using a second motion to recuse which, like the first, had no basis.
>> b. At 8:23 a.m., the Court declined to recuse itself and immediately referred the Motion to Recuse to The Honorable Robert H. Trapp, Presiding Judge of the 2nd Administrative Judicial Region.
>> c. At about 8:30 a.m., Obeginski called the Court to alert the Court that he had filed the Motion to Recuse and wanted to know why the Court's docket sheet still showed the trial going forward at 1:00 p.m. As Judge Bays overheard, Amber Park, the Court Administrator, informed Obeginski that Judge Bays had already denied the motion and sent it to Judge Trapp, advised that she would remove the trial from the docket sheet at his request while the motion to recuse was pending, but insisted that he should monitor the docket because, if the Motion to Recuse was ruled upon before 1:00 p.m., the trial would go forward as scheduled whether with Judge Bays or another appointed visiting judge.
>> . . .

11

d. At 11:23 a.m., Judge Trapp entered an order denying the Motion to Recuse as being untimely filed and not stating a legal basis for recusal.

e. At 11:37 a.m., the Court emailed a copy of Judge Trapp's order to all parties, using the emails on file on eFile Texas and a second email address Obeginski had on file with the District Clerk's office, to alert and inform the parties the trial would proceed at 1:00 p.m. as previously scheduled.

f. The trial was never reset. It was scheduled on May 17, 2024 at 4:13 p.m. to occur on August 26, 2024 at 1:00 p.m. and that is when the case was called to trial.

23. At 1:00 p.m., the Court called the case for trial. Mr. Elizondo and his counsel, William Britton Hall, were present in the courtroom but Obeginski was absent. The Court, on the record, had Amber Park, Court Administrator, call Obeginski to find out where he was and if he was coming. He did not answer. Ms. Park left him a voicemail message informing him that trial was about to start and that he needed to attend.

24. Following the phone call, the Court took a 10-minute break to give Obeginski time to arrive, email, or call back - he did none of these things. He never returned the call, he never arrived, he never emailed. So upon returning to the Bench at 1:18 p.m. with Obeginski still absent and incommunicado, Mr. Hall, counsel for Mr. Elizondo, moved for a post-answer default judgment. Mr. Hall then, on the record, noted that Obeginski had also filed that morning an Interlocutory Appeal and stated his belief that nothing about the Interlocutory Appeal stayed the trial proceedings, to which this Court agreed.

25. Plaintiff then proceeded with its case in chief on liability and damages.

26. Though he never called, emailed, or appeared at the trial, during the course of the trial, Obeginski filed two documents through eFile, one at 1:16 p.m. requesting that he be notified of a trial reset date relying on Texas Rule of Civil Procedure 246, and the other at 1:32 p.m. which was a "Correction to Notice of Setting" changing his reliance on Rule 246 to Rule 245. The first filing occurred before the trial began at 1:18 p.m., and the second, just minutes after the trial began.

a. The Court finds that these actions were gamesmanship. Obeginski had been advised at 8:30 that morning that the case would not be reset if his second motion to recuse was resolved, his second motion to recuse was resolved at 11:25 a.m. by written and filed Order, that Order and announcement that the trial would

12

occur as scheduled was sent at 11:39 am. directly to Obeginski at not one but two email addresses he had on file (including the one he designated for service), the Court called him to advise that it was waiting for him, he did not take that call and he did not return that call.

b. His willful ignorance of what was happening is a direct contrast to the person who took the time and made the effort to call the Court to complain that the trial was still on the docket after he filed his second motion to recuse and who was then advised over the telephone to continue to monitor that docket because the trial would begin as scheduled if the second motion to recuse was resolved in time. Rather than staying aware of the case's status with the Court, suddenly he turned a blind eye and decided to ignore the docket, his email, and his telephone. That is simply not plausible.

c. The very fact that Obeginski filed documents related to the trial reset when, as evidenced by his 8:30 a.m. phone call, he knew full well that the Court could take no action while the motion to recuse was pending is interesting. He obviously knew that the second motion to recuse was disposed so that the Court was no[] longer without power to act on the case as evidenced by the fact that he filed not one but two pleadings demanding to know what the trial "reset" date was. The notion that he forgot to watch the docket, his email, and/or his phone is tough to believe, but the fact that he acted like a person who knew the stay was over makes its untruthfulness readily apparent.

d. Clearly, he knew that the second motion to recuse was resolved thereby permitting the Court to take action regarding the case. Whether he got that information from monitoring the docket, reading the emails, or listening to the phone message matters not - he knew the case was going to trial as originally scheduled and was playing games to avoid the trial via his feigned ignorance.

27. In response to his request for information about a reset, the Court noted on the record that the Court did not reset the trial to a different date and had, in fact, informed Obeginski verbally twice and in writing twice that trial was going forward as scheduled.

28. Obeginski's filings on the morning of trial were an effort to delay the trial and had no basis in fact or law.

29. Obeginski did not reach out to the Court again until the following day when he called the Court Administrator.

The trial court's Conclusions of Law included that the trial was not reset from its scheduled August 26, 2024, setting, and "Obeginski had actual and sufficient notice that trial was proceeding as scheduled at 1:00 p.m. His failure to attend was voluntary and the result of conscious indifference."

## ANALYSIS

Raising ten issues, Obeginski's complaints fall into two broad categories: (1) that the trial court did not have jurisdiction to decide the case for various reasons; and (2) the trial court gave him inadequate notice of the trial resetting in violation of Texas Rule of Civil Procedure 245.[3]

### Subject-Matter Jurisdiction and Standing

Obeginski attacks jurisdiction based on opposing counsel's purported lack of authority to represent Elizondo, the absence of a controversy once his "harassment" complaint was dismissed, what he characterizes as "fraud" by the trial court, and the trial court exceeding its authority by issuing a writ of possession, which he claims only a justice of the peace can do.

---

[3]Obeginski's "issues" are broadly framed questions unattached to any specific rulings. It is in his summary of the trial court proceedings that he provides an indication of the rulings he complains of. Nevertheless, we have tried to reach the merits of these arguments.

14

**Standard of Review and Applicable Law**

"Subject matter jurisdiction is essential to the authority of a court to decide a case." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). "Standing is implicit in the concept of subject matter jurisdiction." *Id.*; *see also Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012) ("A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). It is "a constitutional prerequisite to suit," and courts have no jurisdiction over and thus must dismiss claims made by parties who lack standing to assert them. *Heckman*, 369 S.W.3d at 150–51. "The parameters of constitutional standing are well settled, requiring '[1] a concrete injury [2] that is ... traceable to the defendant's conduct and [3] redressable by court order.'" *Busbee v. Cnty. of Medina*, 681 S.W.3d 391, 395 (Tex. 2023) (quoting *Tex. Bd. of Chiropractic Exam'rs v. Tex. Med. Ass'n*, 616 S.W.3d 558, 567 (Tex. 2021)). We review questions of subject-matter jurisdiction and standing de novo. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2021); *see also Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"Justice courts have original jurisdiction over suits for forcible detainer and forcible entry and detainer, which are types of eviction suits." *Gonzalez v. Garza*, No. 09-25-00459-CV, 2026 WL 1690220, at *5 (Tex. App.—Beaumont June 11, 2026, no pet. h.) (mem. op.) (citing Tex. Gov't Code Ann. § 27.031(a)(2); Tex. Prop.

15

Code Ann. § 24.004(a)). "A person commits forcible entry and detainer if the person enters the real property of another without legal authority or by force and refuses to surrender possession on demand." Tex. Prop. Code Ann. § 24.001(a). "An action for forcible detainer is a 'summary, speedy, and inexpensive remedy for the determination of who is entitled to the possession of premises.'" *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (quoting *Scott v. Hewitt*, 127 Tex. 31, 90 S.W.2d 816 (1936)) (other citation omitted). "The only issue to be resolved in a forcible detainer action is the right to immediate possession of the property; the merits of title are not adjudicated." *Id.* (citation omitted); *see also Gonzalez*, 2026 WL 1690220, at *5 (citations omitted). Justice courts lack jurisdiction to adjudicate title to land as does a county court exercising appellate jurisdiction in a forcible detainer action. *Yarbrough*, 455 S.W.3d at 280. Thus, "where the right to immediate possession necessarily requires resolution of a title dispute, the justice court has no jurisdiction to enter a judgment and may be enjoined from doing so." *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.) (citations omitted).

**Application**

While we do not have the benefit of a reporter's record here, the clerk's record shows that Obeginski's standing and jurisdictional arguments lack merit. At issue is a dispute over who has title to the property sold at a non-judicial foreclosure sale. In

16

his answer to Obeginski's one sentence original petition, Elizondo counterclaimed and alleged he held superior title. He also claimed that Obeginski was unlawfully possessing and refusing to vacate property Elizondo rightfully owned. Elizondo described Obeginski's exploiting a spelling error by the substitute trustee in the deed and how Obeginski attempted to claim ownership through a series of entities using the misspelling of Elizondo's name. Elizondo attached the deeds issued in the foreclosure sale to his original and amended counterclaims. As someone claiming a concrete injury traceable to Obeginski's conduct and redressable by court order, Elizondo had constitutional standing to bring suit. *See Busbee*, 681 S.W.3d at 395; *Tex. Bd. of Chiropractic Exam'rs*, 616 S.W.3d at 567.

The right to immediate possession depends on the resolution of the title dispute, so contrary to Obeginski's assertion, the justice court did not have exclusive jurisdiction in this case. *See Rice*, 51 S.W.3d at 709; *see also Yarbrough*, 455 S.W.3d at 280. The district court here had to first adjudicate the title dispute, and the right to immediate possession hinged on that determination. *See Yarbrough*, 455 S.W.3d at 280; *Rice*, 51 S.W.3d at 709. Thus, the district court had subject-matter jurisdiction to consider this dispute. *See Yarbrough*, 455 S.W.3d at 280; *Rice*, 51 S.W.3d at 709. Despite Obeginski's argument that the trial court's dismissal of his harassment claim deprived the court of jurisdiction because there was no longer a live controversy, the

17

clerk's record shows otherwise since Elizondo's counterclaims remained regarding who held title to the property.

**Jurisdiction Related to the Trial Court's Denial of Specific Motions**

We now turn to specific motions Obeginski claims impacted the trial court's jurisdiction. Obeginski's arguments that opposing counsel lacks the authority to represent Elizondo and that the trial court committed fraud in signing an order denying Obeginski's Motions to Show Authority somehow negated jurisdiction are likewise unavailing.

**Standard of Review and Applicable Law**

Regarding opposing counsel's authority to represent Elizondo, Obeginski invokes Texas Rule of Civil Procedure 12. That rule states,

> A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. The notice of the motion shall be served upon the challenged attorney at least ten days before the hearing on the motion. At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Upon his failure to show such authority, the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears.

Tex. R. Civ. P. 12.

Rule 12's primary purpose is to enforce a party's right to know who authorized the suit. *In re Kinder Morgan SACROC, LP*, No. 11-21-00234-CV, 2021

18

WL 5994365, at *2 (Tex. App.—Eastland Dec. 17, 2021, orig. proceeding) (per curiam) (mem. op.), *mand. denied*, 672 S.W.3d 27, 27 (Tex. 2023) (orig. proceeding); *Rosa v. Dep't of Child Support Off. of Att'y Gen.*, No. 02-24-00529-CV, 2025 WL 1717282, at *4 (Tex. App.—Fort Worth Sept. 26, 2025, pet. denied) (mem. op.) (citations omitted); *see also Angelina Cnty. v. McFarland*, 374 S.W.2d 417, 423 (Tex. 1964). "Rule 12 protects parties from groundless suits and permits dismissal of suits instituted without authority." *Rosa*, 2025 WL 1717282, at *4 (citations omitted); *see also Angelina Cnty.*, 374 S.W.2d at 422–23. "The challenged attorney has the burden of proof to show sufficient authority to represent the client." *In re Kinder Morgan*, 2021 WL 5994365, at *2 (citations omitted). Typically, an attorney satisfies this burden by presenting evidence that the client retained him to provide representation in the case. *See id.* We review a trial court's ruling on a motion to show authority under an abuse-of-discretion standard. *See Rosa*, 2025 WL 1717282, at *4; *Tanner v. Black*, 464 S.W.3d 23, 26 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

**Application**

On May 10, 2024, as Obeginski requested, the trial court considered the Motion to Show Authority via submission, which included the above-described evidence. From the evidence submitted, the trial court could have reasonably determined that counsel met his burden of showing that Elizondo retained him in

19

this action and that he acted with authority. *See* Tex. R. Civ. P. 12; *In re Kinder Morgan*, 2021 WL 5994365, at \*2. Based on this record, given the evidence provided by Elizondo's attorney, we conclude the trial court did not abuse its discretion by denying the Motion to Show Authority or his Motion to Reconsider Motion to Show Authority. *See Rosa*, 2025 WL 1717282, at \*4; *Tanner*, 464 S.W.3d at 26. Regarding his later-filed Motions to Show Authority, which the trial court heard on August 23, then denied on August 25, 2024, Obeginski has failed to request, pay for, and have the court reporter file a record of the hearing. *See* Tex. R. App. P. 34.6; 35.3(b) (stating reporter is responsible for filing record if a notice of appeal has been filed, the appellant requested that the reporter's record be prepared, and the responsible party paid or made arrangements to pay). Without this, we presume that the evidence adduced at the hearing supported the trial court's denial of the Motions to Show Authority. *See In re Guardianship of Berry*, 105 S.W.3d 665, 667 (Tex. App.—Beaumont 2003, no pet.) (stating same in context of guardianship proceeding and plea in abatement).

We now address Obeginski's claim that the trial court committed fraud by signing the order ten days before the hearing which somehow negated jurisdiction. The clerk's record reflects that the unsigned proposed order denying the Motion to Show Authority was filed on April 30, 2024. The clerk's record also reflects that the trial court signed the Order Denying the Motion to Show Authority on May 10, 2024,

20

at 10:27 a.m., which was after Obeginski's scheduled submission. The different dates on the signed order reflect the date it was originally filed as an unsigned proposed order and the later date that the trial court signed it. Obeginski's allegations of fraud committed by the trial court are unfounded.

We have addressed Obeginski's complaints about the denial of his multiple Motions to Show Authority and his Motion to Dismiss for Lack of Standing. As for the trial court's rulings on his Motion to Dismiss for Want of Prosecution and his Motion to Reconsider Objection to Evidence, Obeginski does not explain how the trial court's rulings probably caused the rendition of an improper judgment or prevented him from properly presenting his case to the court of appeals, even if erroneous. *See* Tex. R. App. P. 44.1(a). We overrule issues one through ten as they pertain to Elizondo's standing and the trial court's jurisdiction to hear this case.

### Notice of Trial and Final Judgment

In his brief, Obeginski also challenges the trial court's Final Judgment, generally contending that the trial court improperly proceeded to trial without complying with the notice requirements in Rule 245. Obeginski claims this violated his due process right to be heard. Even so, he has failed to challenge any specific finding of fact related to the notice issue. *See Green v. Alford*, 274 S.W.3d 5, 17 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 319 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)) ("[A]n

21

appellant challenging the sufficiency of the evidence offered in a nonjury trial must challenge specific findings of fact."). He has also failed to designate, request or pay the fee to ensure that a reporter's record was filed. *See* Tex. R. App. P. 34.6, 35.3(b). Despite this Court's correspondence dated April 1, 2025, indicating we would not refuse to file a reporter's record even if it was requested late, Obeginski did not take the necessary steps to have the reporter's record filed. *See id.* 34.6(b)(3), 35.3(c).

**Standard of Review and Applicable Law**

"Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). Due process is satisfied when notice is "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988). Texas Rule of Civil Procedure 245 provides in relevant part:

> The Court may set contested cases on written request of any party, or on the court's own motion, with reasonable notice of not less than forty-five days to the parties of a first setting for trial, or by agreement of the parties; provided, however, that when a case previously has been set for trial, the Court may reset said contested case to a later date on any reasonable notice to the parties or by agreement of the parties.

Tex. R. Civ. P. 245.

**Application**

Obeginski contends that Rule 245 expressly required this matter be reset at a "later date" on reasonable notice to the parties. We disagree, as this presupposes, that the matter was reset from the August 26, 2024, setting.[4]

The trial court's Findings of Fact and Conclusions of Law indicated that this matter was not reset on August 26, 2024. The clerk's record supports the trial court's findings and conclusions, as it confirms Obeginski's late-filed Motion to Recuse was resolved before the scheduled trial setting of August 26, 2024, at 1:00 p.m. The clerk's record also shows that the trial court's administrator emailed a copy of the Order Denying Second Motion to Recuse to the parties before noon and confirmed that the trial would proceed as scheduled. The record also shows that Obeginski continued to file documents with the trial court via e-file after the trial court confirmed that trial would proceed as scheduled, which establishes that he had access to a computer and electronic communications. Further, to the extent that evidence is necessary to challenge any relevant findings, absent a reporter's record, Obeginski is unable to do so, and we must presume that sufficient evidence was introduced to support the trial court's findings of fact and judgment. *See In re Tyler*,

_____

[4]We note this was actually the second setting since the trial court continued the matter from the original June 17, 2024, setting at Obeginski's request.

408 S.W.3d 491, 495 (Tex. App.—El Paso 2013, no pet.) (stating same in context of guardianship proceeding); *Nelkin v. Panzer,* 833 S.W.2d 267, 268 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

On this record, we conclude the trial was not "reset" on August 26, which is a necessary component of Obeginski's argument that it must be moved to "a later date." *See* Tex. R. Civ. P. 245. Under the circumstances, the notice provided by the trial court was reasonably calculated to apprise the parties, including Obeginski, of the trial proceeding as scheduled and afford them an opportunity to be heard. *See Peralta*, 485 U.S. at 84; *Than*, 901 S.W.2d at 930. Consistent with the trial court's findings, the clerk's record supports that Obeginski had constructive, if not actual knowledge, that the trial would proceed as scheduled on August 26, 2024, at 1 p.m., and his failure to appear was intentional. We overrule each of Obeginski's issues implicating his alleged lack of notice of the trial setting.

## CONCLUSION

Having overruled Obeginski's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on February 27, 2026
Opinion Delivered August 6, 2026

Before Golemon, C.J., Wright and Chambers, JJ.

24